UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jonathan Santiago

   v.                                                  Case No. 19-cv-236-JL

William L. Wrenn, N.H. Department of
Corrections Commissioner Helen Hanks,
Warden Michelle Edmark, Commissioner's
Office Representative Christopher Kench,
Major Jon Fouts, and Corrections Officer
Jeffrey Bettez

**REPORT AND RECOMMENDATION**

Before the court is the complaint (Doc. No. 1) filed by plaintiff, Jonathan Santiago, an inmate at the New Hampshire State Prison for Men ("NHSP"). The complaint is before this magistrate judge for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).

**Preliminary Review Standard**

The court may dismiss claims asserted in an inmate's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To determine whether to dismiss claims for failure to state a

claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Background

On January 7, 2018, Mr. Santiago was housed in the NHSP Close Custody Unit ("CCU"), a unit where Corrections Officer ("CO") Jeffrey Bettez was assigned. On the way to the chow hall for lunch on that date, Mr. Santiago was speaking in Spanish with another inmate. He asserts that CO Bettez, overhearing them, interjected, saying, "Stop speaking Spanish or go back to your country." Compl. at 2. Mr. Santiago, who asserts that there is no prison rule against speaking in Spanish, further alleges that CO Bettez's remark triggered a "brief exchange of words" between him and CO Bettez. Compl. at 2. Upon returning from lunch, Mr. Santiago found that CO Bettez had searched his cell and left it in disarray. Mr. Santiago then had a "heated exchange of words" with CO Bettez. Compl. at 3.

All CCU prisoners were then locked in, except Mr. Santiago, who asserts that his cell door was opened, and he was summoned to see the Officer-in-Charge ("OIC"). Mr. Santiago alleges that

CO Bettez approached him aggressively in the OIC's office and then "put his hands" on Mr. Santiago. Compl. at 3. Mr. Santiago was fearful because he was aware that CO Bettez had a "reputation for assaulting prisoners," that CO Bettez had previously been acquitted of felony charges relating to an assault, and that CO Bettez had been sued civilly for assaulting inmates. Mr. Santiago at that point turned to the OIC for help. Compl. at 3. When the OIC shrugged his shoulders, Mr. Santiago took steps he describes as "defend[ing] himself." Compl. at 3.

Disciplinary proceedings ensued. Mr. Santiago pleaded not guilty to charges of assault and threatening conduct, in violation of prison rules. After a disciplinary hearing, the Hearings Officer concluded that Mr. Santiago was guilty. She found that after one or more officers brought Mr. Santiago "to the ground" for refusing an order to lock in, Mr. Santiago assaulted CO Bettez by sitting on his back. Jan. 25, 2018 Hr'g Results (Doc. No. 1-1, at 1).

The court identifies Mr. Santiago's claims for equitable relief and damages as follows:

> 1. CO Bettez discriminated against Mr. Santiago on the basis of race or national origin, in violation of the Fourteenth Amendment's Equal Protection Clause, by telling Mr. Santiago to "stop speaking Spanish or go back to your country."

2.   The defendant supervisory prison officials violated Mr. Santiago's Eighth Amendment rights by failing to protect Mr. Santiago from CO Bettez, despite knowing of that officer's history of having assaulted inmates.

3.   Defendants are liable to plaintiff under state law for the intentional torts of assault, false arrest, false imprisonment, intentional infliction of emotional distress, libel, and slander.

## Discussion

I.   Claim 1

In Claim 1, Mr. Santiago alleges that CO Bettez violated his Fourteenth Amendment right to equal protection by telling Mr. Santiago not to speak Spanish and to go home to his own "country," presumably meaning somewhere other than the United States.  Mr. Santiago further asserts that there is no rule prohibiting inmates from speaking in Spanish.

A guard's use of racially-charged or xenophobic language, standing alone, does not generally amount to a violation of an inmate's equal protection rights.  See Watson v. Louis, 560 F. App'x 911, 913 (11th Cir. 2014) (courts have held that "offensive or derogatory statements, even if racially tinged or racially motivated, do not violate equal protection guarantees unless they are so pervasive as to amount to racial harassment or are accompanied by some other conduct that deprives a person of the equal protection of the laws" (citing cases)); Gannaway v. Berks Cty. Prison, 439 F. App'x 86, 91 (3d Cir. 2011)

("'[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution'" (citation omitted)). Mr. Santiago has not alleged any facts suggesting that CO Bettez subjected him to the type of racially-motivated pervasive harassment or discriminatory treatment that would state a claim of a Fourteenth Amendment violation upon which relief can be granted. Accordingly, the district judge should dismiss Claim 1.

II. Claim 2

In Claim 2, Mr. Santiago alleges that the defendant supervisory prison officials failed to protect him from CO Bettez, an officer who is alleged to have had a reputation for assaulting inmates and a history of being a defendant in cases involving inmate assaults.

> A supervisory liability claim under section 1983 has two elements: the plaintiff must plausibly allege that "one of the supervisor's subordinates abridged the plaintiff's constitutional rights" and then forge an affirmative link between the abridgement and some action or inaction on the supervisor's part.

Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (citations omitted).

> Although a supervisor need not personally engage in the subordinate's misconduct in order to be held liable, his own acts or omissions must work a constitutional violation. Facts showing no more than a supervisor's mere negligence vis-à-vis his subordinate's misconduct are not enough to make out a claim of supervisory liability. At a minimum,

5

>     the plaintiff must allege facts showing that the
>     supervisor's conduct sank to the level of deliberate
>     indifference.

Id. at 15 (citations omitted).  "A showing of deliberate indifference has three components: "the plaintiff must show '(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists.'"  Id. (citation omitted).

>     In order for a subordinate's earlier conduct to put
>     officials on notice of a substantial risk of serious harm,
>     there must be some fact or facts that, whether viewed
>     singly or in combination, plausibly signal a likelihood
>     that particular misconduct may occur.  An isolated incident
>     that concerns arguably relevant misconduct, without more,
>     typically will not be enough to ground a reasonable
>     inference that a substantial risk of serious harm was in
>     prospect.

Id. at 16 (citations omitted).

>     And even if the complaint contains facts plausibly showing
>     deliberate indifference, the plaintiff must also allege
>     facts giving rise to a causal nexus between the
>     supervisor's acts or omissions and the subordinate's
>     misconduct.  In other words, a supervisor's deliberate
>     indifference must lead in a straight line to the putative
>     constitutional violation.

Id. (citations omitted).

The complaint's allegations as to CO Bettez begin with Mr. Santiago's allegation that CO Bettez made a racist, ethnocentric, or xenophobic remark to Mr. Santiago, unrelated to any legitimate purpose, which triggered an exchange of words between the guard and the inmate.  Then, while Mr. Santiago was

6

at lunch, CO Bettez searched Mr. Santiago's cell and left it in disarray, which Mr. Santiago considered to be harassing and retaliatory, and which led to a "heated" argument between the guard and the inmate.  And then, in the OIC's office, CO Bettez "put his hands on" Mr. Santiago, without the OIC intervening, triggering Mr. Santiago's aggressive response that resulted in disciplinary charges.

The allegations about the cell search and CO Bettez's remark do not give rise to any viable claim that CO Bettez violated Mr. Santiago's federal constitutional rights.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 530 (1984) (inmates have no protected liberty interest to be free from searches of their cells); Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015) ("most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment"); Cote v. Barnhart, No. 1:12-cv-00081-NT, 2012 U.S. Dist. LEXIS 42228, at *8, 2012 WL 1038918, at *3 (D. Me. Mar. 23, 2012) ("a thorough cell search is not 'sufficiently serious,' to describe objectively cruel and unusual treatment" (citations omitted)), R&R approved, 2012 U.S. Dist. LEXIS 85439 (D. Me. June 20, 2012); Koch v. Westerman, No. 07-cv-0004-MJR, 2009 WL 249222, at *5, 2009 U.S. Dist. LEXIS 7060, at *12 (S.D. Ill. Feb. 2, 2009) ("cell searches" and "verbal harassment" are "minor annoyances of everyday prison

7

life and would not support a retaliation claim"); Zavala v. Barnik, 545 F. Supp. 2d 1051, 1058 (C.D. Cal. 2008) ("verbal harassment, abuse, and threats, without more, are not sufficient to state a Fourteenth Amendment constitutional deprivation under [42 U.S.C.] § 1983"), aff'd, 348 F. App'x 211 (9th Cir. 2009).

Moreover, the allegation that CO Bettez "put his hands on" Mr. Santiago in the OIC's office after they had a "heated" argument does not state a claim that CO Bettez violated Mr. Santiago's Eighth Amendment rights. Under the Eighth Amendment, an excessive force claim "'has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.'" Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (citations omitted). "The subjective prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (citations omitted). While an inmate must also show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," id. (internal quotation marks and citations omitted), an inmate need not prove a "'significant injury' in order to state an excessive force claim," Wilkins v. Gaddy, 559 U.S. 34, 36-37 (2010) (citation omitted).

The "factors" that "are relevant to that ultimate

> determination" include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," "the need for the application of force," "the relationship between the need and the amount of force that was used," "the extent of the injury inflicted," and "any efforts made to temper the severity of a forceful response."

Staples, 923 F.3d at 13 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

The facts pleaded by Mr. Santiago indicate that CO Bettez had physical contact with Mr. Santiago in the presence of a third party, the OIC, after they had engaged in a "heated" exchange.  Although Mr. Santiago alleges that he considered CO Bettez's demeanor to have been aggressive as he approached Mr. Santiago, the allegations do not suggest that the physical contact inflicted any injury at all, or otherwise amounted to a malicious or sadistic display of "excessive" force.  In addition, the timing of the event, after an argument, suggests that the officers perceived a need to restore discipline.  Without more, the allegations do not suffice to state a claim that CO Bettez violated Mr. Santiago's Eighth Amendment rights.

Absent a showing that CO Bettez's words and conduct violated Mr. Santiago's federal constitutional rights, plaintiff cannot show that the supervisory prison officials named as defendants caused a violation of Mr. Santiago's federal rights. Furthermore, the facts pleaded by Mr. Santiago do not show that

9

prison officials were aware of, or deliberately indifferent to, CO Bettez's "reputation" for assaulting inmates, or that they were on notice that the unspecified incident for which Mr. Santiago asserts CO Bettez was acquitted and then sued civilly involved an assault that was likely to recur.  Cf. Parker, 935 F.3d at 16 ("In order for a subordinate's earlier conduct to put officials on notice of a substantial risk of serious harm, there must be some fact or facts that, whether viewed singly or in combination, plausibly signal a likelihood that particular misconduct may occur.").  Accordingly, the district judge should dismiss Claim 2, for failure to state a claim upon which relief can be granted.

III. Claim 3

In Claim 3, Mr. Santiago alleges that the defendants are liable to him under state tort law.  Under 28 U.S.C. § 1367(c)(3), this court may decline to exercise supplemental jurisdiction over state law claims where the court has dismissed all claims over which it has original jurisdiction.  In light of the foregoing recommendation that the district judge dismiss all of Mr. Santiago's federal claims, the district judge should also dismiss the state law claims (summarized in Claim 3) without prejudice to Mr. Santiago's ability to file a new complaint in state court raising those claims.

**Conclusion**

For the foregoing reasons the district judge should: (1) dismiss all of Mr. Santiago's federal claims under 42 U.S.C. § 1983 (Claims 1 and 2) for failure to state a claim upon which relief can be granted; (2) dismiss Mr. Santiago's state law claims (Claim 3) without prejudice to his ability to file a new lawsuit in state court raising those claims; and (3) direct that judgment be entered, and this case be closed.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). That period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 15, 2020

cc: Jonathan Santiago, pro se